# EXHIBIT "C"

Alternative Market Placement
P. O. Box 29611
Charlotte, NC 28229-9611



Provided by Nutmeg Insurance Agency, Inc.,
A member of The Hartford Financial Services Group, Inc.

CA license # OC26153

July 22, 2008

Berenyi Engineering, Inc
224 Seven Farms Dr.
Charleston, SC 29492

Re:    **Professional Liability**,
Policy Term **5/18/2008 - 5/18/2009**
Policy Number **LHR717616**



Dear **Tammi and Sandie**:

We are pleased to enclose the original copy of the **Professional Liability Policy** you requested.  Please
review it carefully to see that it meets with your specifications and advise of any corrections or changes
that you deem necessary.

To facilitate any coverage or billing inquiries you may have, please note the following information:
*For billing inquiries, your Direct Bill Account (TABS) number is 11350902.*
*For claim reporting, please call 1-877-215-3438. Your account number is 34820.  Your policy number*
*is shown above.*
We thank you for the opportunity to provide this coverage.  Please contact us if we can be of further
assistance.

**Please note that we are acting as a broker/intermediary with respect to this policy, and The**
**Hartford is not your insurer.**

Nutmeg Insurance Agency Disclosure
Nutmeg Insurance Agency, Inc. (Nutmeg) acts exclusively as a non-agent intermediary or as an agent and
representative of the insurers whose products we distribute.  We may also provide services to you on behalf of such
insurers.  Nutmeg does not act as a broker, advisor or representative of the applicant or policyholder.  Nutmeg
receives compensation from its insurers and other intermediaries for the sale and/or service of their products,
including a base commission, compensation based upon the amount of business we place with some insurers and/or
the profitability of such business, and other fees and forms of compensation.  Nutmeg is a subsidiary of The
Hartford.  Policies offered through Nutmeg are not underwritten by The Hartford.

Sincerely,

Regina Grippin,
**Phone:** (877) 853-2582   Ext 4430
**Fax:** (877) 905-2772
**Email:  regina.grippin@thehartford.com**



# *Professional Liability Insurance*

**CLAIM OFFICE:**

**Mail claims to:**
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA  30326-1160

**Fax claims to:**
(404) 260-3997
(Attn: Claims Department)

RSG 51029 0505

Your policy has been signed on our behalf by our President and by our Secretary and Treasurer.  However, your policy will not be binding on us unless it is also countersigned by one of our duly authorized agents.

*David E. Leonard*

President

**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

*Kathy aleun*

Secretary

**Landmark American Insurance Company**
**Covington Specialty Insurance Company**



# PROFESSIONAL LIABILITY POLICY DECLARATIONS
## (Claims-Made Form)

## Landmark American Insurance Company
### (An Oklahoma Stock Co.)
### (hereinafter called "the Company")

EXECUTIVE OFFICES:    945 East Paces Ferry Road, Suite 1800, Atlanta, GA 30326-1160

**Policy Number:**    LHR717616          **RENEWAL OF:**    LHR713401

**Named Insured and Mailing Address:**          **Producer Name:**

BERENYI, INC.
224 SEVEN FARMS DRIVE
CHARLESTON, SC 29492

**Policy Period:    From:** 05/18/08    **To:** 05/18/09    at 12:01 A.M. Standard Time at the Named Insured address as stated herein.

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED AS FOLLOWS:

1. **NAMED INSURED'S PROFESSIONAL SERVICES:**    CIVIL ENGINEERING, LANDSCAPE ARCHITECTURE, STRUCTURAL ENGINEERING, ARCHITECTURE

2. **LIMITS OF LIABILITY:**    $ 1,000,000.00    **Each Claim**

    $ 1,000,000.00    **Aggregate Limit**

3. **DEDUCTIBLE:**    $ 15,000.00    **Each Claim Applies to Indemnity and Expense**

4. **RETROACTIVE DATE:**    05/18/2005

5. **PREMIUM:**    $ 14,250.00    Not Subject to Audit

    +$350 Policy Fee +$292 Municipal Tax +$584 S/L Tax

6. **FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

    See attached forms list.

THESE DECLARATIONS TOGETHER WITH A SIGNED COPY OF THE NAME INSURED'S APPLICATION FOR THIS POLICY, COVERAGE FORM(S), FORMS AND ENDORSEMENTS, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED WHILE THE POLICY IS IN FORCE. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENCY OR BROKER.

06/09/2008
Date

By: _Nancy A. Davies_
Authorized Representative

This company has been approved by the director or the designee of the South Carolina Department of Insurance to write business in this State as an eligible surplus line insurer but is not afforded guaranty fund protection.

SubIdID#:    109968    BinderID#
Created By:

RSG 50004 0407

**LANDMARK AMERICAN INSURANCE COMPANY**

## SCHEDULE OF FORMS AND ENDORSEMENTS

RSG 51001 0604     Architects And Engineers Professional Liability Coverage Form Claims Made Basis - RSG 51001 0604

| | |
|---|---|
| ENDT-01 | Additional Exclusions Endorsement - RSG 56001 0903 |
| ENDT-02 | Biological Contaminants Exclusion - RSG 56010 0903 |
| ENDT-03 | Minimum Retained Premium - RSG 54025 0405 |
| ENDT-04 | Nuclear Energy Liability Exclusion - RSG 56058 0903 |
| ENDT-05 | Owned or Other Affiliated Entity Exclusion - RSG 56062 0903 |
| ENDT-06 | Service Of Suit - RSG 94022 0407 |
| ENDT-07 | Warranty Endorsement - RSG 54024 0903 |

Policy Number: LHR717616

RSG 14054 0903

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Form Provides Claims-Made Coverage.*
*Please Read The Entire Form Completely.*

# ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE BASIS

Throughout this document, the word "Insured" means any person or entity qualified as such under **Part I. (E.) Covered Persons and Entities.** The word "Company" refers to the Company providing the insurance shown on the Declarations.

Other words and phrases that appear in **bold** have special meaning. Refer to **Part III. Definitions.**

## Part I.  Insuring Agreements

### A.  Covered Services

The Company will pay on behalf of the Insured as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error or omission, even if such **Claim** is groundless, false or fraudulent, in the rendering of or failure to render professional services as described in the Declarations, provided that the:

1.  **Claim** is first made against the Insured during the **Policy Period**, and reported to the Company no later than thirty (30) days after the end of the **Policy Period**;

2.  Negligent act, error or omission took place in a covered territory;

3.  Negligent act, error or omission took place after the **Retroactive Date** shown in the Declarations

### B.  Defense & Settlement

The Company will have the right and duty to defend any **Claim** against an Insured seeking **Damages** to which this policy applies, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The Company's right and duty to defend any **Claim** shall end when the Company's Limit of Liability has been exhausted by payment of **Damages** and/or **Claim Expenses**, or has been tendered to the Insured, or to a court of competent jurisdiction.

The Company shall not settle any **Claim** without the Insured's written consent. If, however, the Insured refuses to consent to any settlement recommended by the Company and elects to contest the **Claim,** or continue any legal proceedings in connection with such **Claim,** then the Company's maximum liability shall be limited to the amount for which the **Claim** could have settled, including the total amount of **Claims Expenses** incurred up to the date of the Insured's refusal. Such amounts are subject to the provisions of section **(C.) Policy Limits.**

The Insured shall not admit any liability for or settle any **Claim** or incur any costs, charges or expenses without the written consent of the Company.

### C.  Policy Limits

Regardless of the number of persons or entities insured or included in **Part I. (E.) Covered Persons and Entities,** or the number of claimants or **Claims** made against the Insured:

1.  The maximum liability of the Company for **Damages** and **Claim Expenses** resulting from each **Claim** first made against the Insured during the **Policy Period** and the Extended Reporting Period if purchased, will not exceed the amount shown in the Declarations as each **Claim.**

---

RSG 51001 0604

2. The maximum liability of the Company for all **Damages** and **Claim Expenses** as a result of all **Claims** first made against the Insured during the **Policy Period** and the Extended Reporting Period if purchased, will not exceed the amount shown in the Declarations as Aggregate.

The Company shall not be obligated to pay any **Claim** for **Damages** or judgment or to defend any **Claim** after the applicable Limit of Liability has been exhausted by payment of judgments, settlements, **Claim Expenses**, or any combination thereof. **Claim Expenses** are part of and not in addition to the applicable Limits of Liability. Payment of **Claim Expenses** by the Company reduces the applicable Limits of Liability.

The inclusion of more than one Insured, or the making of **Claims** by more than one person or organization, does not increase the Company's Limit of Liability. In the event two or more **Claims** arise out of a single negligent act, error or omission, or a series of related negligent acts, errors or omissions, all such **Claims** will be treated as a single **Claim**. Whenever made, all such **Claims** will be considered first made and reported to the Company during the **Policy Period** in which the earliest **Claim** arising out of such negligent act, error or omission was first made and reported to the Company, and all such **Claims** shall be subject to the same Limit of Liability.

## D. Deductible Provisions

The deductible amount stated in the Declarations will be paid by the Insured and is applicable to each **Claim**, and includes **Damages** or **Claims Expenses**. If the deductible amount is initially paid by the Company, upon written request of the Company, the Insured, will reimburse the amount paid within thirty (30) days.

## E. Covered Persons and Entities

1. Named Insured as stated in the Declarations;

2. If an individual, the Named Insured and his/her spouse, but only with respect to the professional services rendered by or on behalf of the Named Insured;

3. Any present or former principal, partner, officer, director, or employee of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured;

4. Heirs, Executors, Administrators, and legal representatives of any Insured in the event of an Insured's death, incapacity or bankruptcy, but only with respect to professional services rendered prior to such Insureds death, incapacity or bankruptcy.

## F. Covered Territory

This policy applies to covered **Claims** arising out of a negligent act, error, or omission committed by, and **Claims** made against the Insured anywhere in the world, provided that such **Claims** are first made and suits are brought within the United States of America, its territories or possessions, Puerto Rico or Canada.

## G. Extended Reporting Period

If the policy is not renewed for any reason, or is cancelled for any reason other than for non payment of premium or deductible (whether cancelled by the Company or by the Named Insured), the Named Insured as shown on the Declarations, has the right to purchase, within thirty (30) days of policy termination, an extension of the coverage granted by this policy. This reporting period extension shall remain in force for a period of twelve (12) months after the policy terminates, but only for **Claims** resulting from negligent acts, errors or omissions committed before the effective date of the cancellation or non-renewal, and otherwise covered by this policy. Increased premiums or deductibles or modifications of coverage terms or conditions upon renewal do not constitute cancellation or non renewal.

The premium for this Extended Reporting Period will not exceed two hundred percent (200%) of the full annual premium set forth in the Declarations and any attached endorsements, and must be elected and paid within thirty (30) days after the effective date of the policy's termination. Such additional premium is deemed fully earned immediately upon the inception of the Extended Reporting Period.

The Extended Reporting Period is added by endorsement and, once endorsed, cannot be cancelled. The Extended Reporting Period does not reinstate or increase the Limits of Liability. The Company's Limits of Liability during the Extended Reporting Period are a part of, and not in addition to, the Company's Limits of Liability stated in the Declarations.

## Part II. Exclusions

This policy does not apply to any **Claim** or **Claim Expenses** based upon or arising out of:

**A.** **Personal Injury** or **Advertising Liability.**

**B.** Obligations of any Insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**C.** **Bodily Injury**, to any of the following:

   1. Officers, directors, partners or employees of the Insured, arising out of or in the course of employment by the insured;

   2. The spouse, child, parent, or sibling of **C. (1)** above.

**D.** Advising, failing to advise, provide, require, obtain or maintain any form of bond, suretyship, or insurance.

**E.** The insolvency or bankruptcy of an Insured or of any other person, firm or organization.

**F.** Dishonest, fraudulent, criminal or intentional acts, errors, or omissions committed by or at the direction of the Insured.

**G.** Any business enterprise not named in the Declarations which is owned, controlled, operated or managed by any Insured.

**H.** A **Claim** by one Insured under this policy against another Insured under this policy.

**I.** Any obligation or liability assumed by the Insured under any contract or any oral or written agreement, unless liability would have attached in the absence of such a contract or agreement.

**J.** Breach of express or implied warranty or guarantee.

**K.** Failure to perform work for a specified fee.

**L.** Services performed as part of a joint venture or by any other member of such joint venture, unless named in this policy.

**M.** The ownership, rental, leasing, maintenance, use (including operation, loading and unloading), or repair of any real or personal property, including **Damage** to property owned, occupied or used by or rented or leased to an Insured.

**N.** The ownership, maintenance, use (including operation, loading and unloading), or entrustment to others of any aircraft, automobile, motor vehicle, mobile vehicles or watercraft owned or operated by or rented or loaned to any insured. Use includes operation, loading and unloading.

**O.** 1. The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of **Pollutants** or asbestos;

   2. The failure to discover or disclose the existence or amount of **Pollutants** or asbestos; or

   3. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with **O. (1)** or **(2)** above;

   4. Any request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or, in any way respond to or assess the effects of **Pollutants** or asbestos;

   5. Any **Claim** or suit by or on behalf of a governmental authority for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or, in any way, responding to, or assessing the effect of **Pollutants** or asbestos.

**P.** 1. Refusal to employ;

   2. Termination of employment;

3. Coercion, demotion, performance evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment related practices, procedures, policies, acts or omissions; or

4. Consequential **Bodily Injury** or **Personal Injury** as a result of **P. (1)** through **(3)** above.

This exclusion applies whether the Insured may be held liable as an employer or in any other capacity and to any obligation to share **Damages** with or to repay someone else who must pay **Damages** because of the injury.

It is further agreed that no coverage shall apply under this policy to any **Claim** brought by or against any spouse, child, parent, brother or sister of the Insured or any other person. The Company shall not have a duty to defend any **Claim**, suit, arbitration or any other form of a trial court proceeding.

**Q.** Any alleged act, error, omission, or circumstance likely to give rise to a **Claim** that an Insured had knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to, any prior **Claim** or possible **Claim** referenced in the Insured's application.

**R.** Cost overruns or cost estimates being exceeded.

**S.** Infringement of copyright, patent, trademark, trade name, trade dress, service mark, title or slogan.

**T.** Actual construction performed by the Insured, the Insured's agent, or the Insured's subcontractor including, but not limited to, performing construction, erection, fabrication, installation, assembly, manufacture, demolition, dismantling, drilling, excavation, dredging, remediation, or supplying any materials, parts, or equipment, except for supplying furnishings as a part of interior design services; however, this exclusion does not apply to drilling, excavation, or other sampling or testing procedures necessary to perform Insured's professional services;

**U.** **Claims** for which the Insured is an insured on any other liability insurance policy that covers professional liability, including any project policy. This exclusion applies to those **Claims** and any project policy deductible or self-insured retention for those **Claims**, even if those **Claims** are not covered in whole or in part by that policy for any reason including, but not limited to, an exclusion or a reduction or exhaustion of the limits of liability.

**V.** An actual or alleged failure to prepare or provide designs, drawings, estimates, plans, specifications studies, or surveys in a timely manner or within a prescribed period of time.

**W.** A certification or refusal to certify for payment.

## Part III.    Definitions

**A.** **Advertising Liability** means injury arising out of one or more of the following offenses:

1. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2. Oral or written publication or material that violates a person's right or privacy;

3. Misappropriation of advertising ideas or style of doing business.

**B.** **Bodily Injury** means physical or mental harm, sickness or disease sustained by a person, including death resulting from any of these at any time.

**C.** **Claim** means a written or verbal demand received by the Insured for money or services, including service of suit or institution of arbitration proceeding against the Insured.

**D.** **Claim Expense** means expenses incurred by the Company, or the Insured with the Company's Consent, in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered **Claims**, whether paid by the Company or the Insured with the Company's consent, and includes:

1. Attorneys fees;

2. Costs taxed against the Insured in any **Claim** defended by the Company;

3. Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Liability;

4. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the available applicable policy limit, and only if said **Claims** are covered by the policy;

5. Reasonable expenses incurred by the Insured at the Company's request other than:

   a. Loss of earnings and;

   b. Salaries or other compensation paid to the Insured or any employee of the Insured.

E. **Damages** means monetary judgment, award or settlement, except those for which insurance is prohibited by law. **Damages** does not include punitive or exemplary **Damages,** fines, penalties, sanctions, taxes, awards, or **Damages** that are multiples of any covered **Damages,** or disputed fees, deposits, commissions or charges for goods or services.

F. **Policy Period** means the period of time stated in the Declarations or any shorter period resulting from policy cancellation or amendment to the policy.

G. **Personal Injury** means injury other then **Bodily Injury** arising out of one or more of the following offenses:

   1. False arrest, detention or imprisonment;

   2. Malicious prosecution or abuse of process;

   3. Wrongful entry or eviction or other invasion or violation of the right of private occupancy;

   4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   5. Oral or written publication of material that violates a person's right of privacy.

H. **Retroactive Date** means the date stated in the Declarations on or after which any alleged or actual negligent act, error or omission must have first taken place in order to be considered for coverage under this policy.

I. **Pollutants** means any sold, liquid, gaseous or thermal irritant, contaminant or toxin including but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, silica, lead, lead compounds or materials containing lead, asbestos, asbestos compounds or materials containing asbestos, radon, waste or any like substances. In addition to **Pollutants** to be disposed of, waste also includes materials to be recycled, reconditioned or reclaimed.

## Part IV.  General Conditions

### A.  Notice of Claim

The Insured must notify the Company as soon as practicable of an incident, occurrence or offense that may reasonably be expected to result in a **Claim.** The Insured must immediately send copies to the Company of any demands, notices, summonses or legal papers received in connection with any **Claim,** and must authorize the Company to obtain records and other information. Please send all claim information to:

> Attention: Claims Dept.
> RSUI Group, Inc.
> 945 East Paces Ferry Road, Suite 1800
> Atlanta, Georgia 30326-1160

### B.  Prohibition of Voluntary Payments and Settlements

With respect to any **Claim** covered under this policy, the Insured shall not, except at the Insured's own cost, make any payment, admit liability, settle **Claims,** assume any obligation, agree to arbitration or any other means of resolution of any dispute, waive any rights or incur **Claim Expenses** without prior written approval by the Company.

### C. Cooperation

The Insured will cooperate with the Company in the conduct of a **Claim** and, upon the Company's request, submit to examination and interrogation by Company representatives under oath if required, and attend hearings and trials, and assist in affecting settlements, securing and giving evidence, and obtaining the attendance of witnesses.

### D. Notice of Cancellation and Non Renewal

The Named Insured may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

For other than non payment of premium or deductible, the Company will give the Named Insured sixty (60) days written notice prior to cancellation or non renewal of this policy by mailing or delivering the notice to the first Named Insured's last known mailing address. If the Company cancels the policy due to the Named Insured's failure to pay a premium when due, this policy may be canceled by the Company giving not less than 10 days written notice of cancellation.

The cancellation notice will state the effective date of the cancellation and the policy will terminate on that date. If canceled by the Company, the earned premium shall be computed pro-rata. If canceled by the Insured, the earned premium shall be computed short rate.

### E. Premium and Audit

Premium for this coverage is computed in accordance with the Company's rules and rates. Any premium shown as advance premium may be a deposit premium only. If the premium is a deposit premium, at the close of each audit period, the Company will compute the earned premium for that period. Audit premiums are due and payable upon notice.

The Company may examine and audit the Insured's books and records at any time during the **Policy Period** and within three years after the final termination of this policy, as far as they relate to the subject matter of this policy. The first Named Insured as shown in the Declarations must keep records of information the Company will need for premium computation and, upon request must send the Company copies of the information upon request.

### F. Authorization

The first Named Insured listed in the Declarations agrees to act as the Named Insured with respect to the giving and receiving of all notices, exercising of Extended Reporting Period option, cancellation of the policy, payment of premiums and deductibles, and receiving of any return premiums that may become due.

### G. Change

This policy contains all of the agreements concerning the insurance provided. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with the Company's consent. The policy terms can be amended or waived only by endorsement issued by the Company and made a part of this policy.

### H. Subrogation

In the event of any **Claim** under this policy, the Company will be subrogated to all the Insured's rights of recovery against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the loss to prejudice such rights.

### I. Other Insurance

This policy will be excess over, and will not contribute with, any other existing insurance, unless such other insurance is specifically written to be excess of this policy.

If it is determined that both this insurance and other insurance or self insurance apply to any **Claim** on the same basis, whether primary, excess or contingent, the Company will not be liable under this policy for a greater proportion of the **Damages** or **Claim Expenses** than the applicable Limit of Liability under the policy for such **Damages** bears to the total applicable Limit of Liability of all other insurance or self insurance, whether or not collectible, against such **Claims.**

**J. Actions Against the Insurer**

No action will be taken against the Company unless, as a condition precedent, the Insured is in full compliance with all of the terms of this policy and until the amount of the Insured's obligations to pay shall have been finally determined, either by judgment against the Insured, after actual trial or by written agreement of the Insured, the claimant and the Company.

**K. Non-Transferability**

The Insureds' rights and duties under this policy may not be transferred without the written consent of the Company.

**L. Coverage in Bankruptcy**

Bankruptcy or insolvency of the Insured or of the Insured's estate does not relieve the Company of its obligations under this policy.

**M. False or Fraudulent Claims**

If an Insured makes any **Claim** that is false or fraudulent, this insurance shall become void and entitlement to coverage for all **Claims** hereunder shall be forfeited with regard to such Insured.

**N. Application**

The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured and the Company, or any of its agents, relating to this insurance.

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ADDITIONAL EXCLUSIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE BASIS**

In consideration of the premium charged, it is agreed that **Part II. Exclusions** is amended to include the following:

X. Any condominium design or work will be excluded.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     05/18/2008
Forms part of Policy Number    LHR717616
Issued to    BERENYI, INC.
by    Landmark American Insurance Company

Endorsement No.:     01

RSG 56001 0903

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# BIOLOGICAL CONTAMINANTS EXCLUSION

This endorsement modifies insurance provided under the following:

**ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE BASIS**

I.  In consideration of the premium charged, it is agreed that the following **Exclusion** is added to the policy:

**Biological Contaminant**;

II.  It is further agreed that the following **Definition** is added to the policy:

**Biological Contaminant** means any biological irritant or contaminant including but not limited to any form of mold, mildew, mushroom, yeast, fungus, bacteria, virus, insect, allergen and any other type of biological agent, including any substance produced by, emanating from, or arising out of such **Biological Contaminant**.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    05/18/2008
Forms part of Policy Number   LHR717616
Issued to   BERENYI, INC.
by   Landmark American Insurance Company

Endorsement No.:    02

RSG 56010 0903

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MINIMUM RETAINED PREMIUM

This endorsement modifies insurance provided under the following:

## ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE BASIS

In the event of cancellation of this policy by the Insured, return premium shall be computed at .90 of the pro rata unearned policy premium, subject however to a retention by the company of not less than $3,562.50.

Nothing in this endorsement is deemed to affect the Company's cancellation rights which remain as indicated in the coverage form.

It is further agreed that return premium may be allowed on a pro rata basis if cancelled for non payment of premium or deductible, subject however to retention by the company of the minimum retained premium as shown above.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    05/18/2008
Forms part of Policy Number   LHR717616
Issued to    BERENYI, INC.
by    Landmark American Insurance Company

Endorsement No.:    03

RSG 54025 0405

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

# NUCLEAR ENERGY LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE BASIS**

**This policy does not apply;**

a. **Under any Liability Coverage,** to bodily injury or property damage;

  (1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Associates of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

  (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b. **Under any Medical Payments Coverage** or any Supplemental Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

c. **Under any Liability Coverage** to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

  (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

  (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

d. **As used in this Endorsement:**

  (1) "Hazardous properties" include radioactive, toxic, or explosive properties;

  (2) "Nuclear material" means source material, special nuclear material or byproduct material;

  (3) "Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

  (4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor,

  (5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

This endorsement effective    05/18/2008
Forms part of Policy Number    LHR717616
Issued to    BERENYI, INC.
by    Landmark American Insurance Company

Endorsement No.:    04

RSG 56058 0903

(6) "Nuclear facility" means:

    (a) any nuclear reactor;

    (b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste;

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

All other terms and conditions of this policy remain unchanged.

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# OWNED OR OTHER AFFILIATED ENTITY EXCLUSION

This endorsement modifies insurance provided under the following:

**ARCHITECTS AND ENGINEERS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE BASIS**

In consideration of the premium charged, it is hereby understood and agreed that this policy does not apply to any claim arising out of or connected with the performance or failure to perform services for any person or entity:

1) which is owned by or controlled by any Insured; or

2) which owns or controls any Insured; or

3) which is affiliated with any Insured through any common ownership or control; or

4) in which any Insured is a director, officer, partner or principal stockholder.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    05/18/2008
Forms part of Policy Number    LHR717616
Issued to    BERENYI, INC.
by    Landmark American Insurance Company

Endorsement No.:    05

RSG 56062 0903

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy. Please Read It Carefully.*

# SERVICE OF SUIT

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States, moreover, this endorsement is not an agreement that the law of a particular jurisdiction applies to any dispute under the policy.

Service of process in such suit may be made upon the Senior Claims Officer of RSUI Group, Inc. 945 East Paces Ferry Road, Suite 1800, Atlanta, GA 30326-1160, or his designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of the policy remain unchanged

This endorsement effective      05/18/2008
Forms part of Policy Number     LHR717616
Issued to     BERENYI, INC.
by    Landmark American Insurance Company

Endorsement No.:      06

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

# WARRANTY ENDORSEMENT
## (COMMERCIAL GENERAL LIABILITY INCLUDING PRODUCTS/COMPLETED OPERATIONS)

This endorsement modifies insurance provided under the following:

### PROFESSIONAL LIABILITY COVERAGE PART

It is hereby understood and agreed that, as a condition precedent to all coverage under this policy, the Insured will maintain, on a continuous basis, subsequent to the retroactive date of this policy, General Liability Insurance coverage including Products and Completed Operations coverage, with limits of liability of not less than $1,000,000. Failure to maintain such General Liability Insurance coverage, shall result in the voiding of all insurance coverage under this policy unless you have obtained prior consent from us and such consent has been endorsed to this policy.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    05/18/2008
Forms part of Policy Number    LHR717616
Issued to    BERENYI, INC.
by    Landmark American Insurance Company

Endorsement No.:    07

RSG 54024 0903

| **RSUI Group, INC.**<br>945 East Paces Ferry Road,<br>Suite 1800<br>Atlanta, GA 30326-1125 | **APPLICATION FOR PROFESSIONAL<br>LIABILITY INSURANCE<br>ARCHITECTS & ENGINEERS<br>(CLAIMS-MADE FORM)** |
|---|---|

1. NAME OF APPLICANT: _Berenyi Incorporated_

2. MAILING ADDRESS: _334 Seven Farms Drive_ Phone No. _843 3649203_

3. DATE ESTABLISHED _1984_ Corporation _X_ Partnership _____ Individual _____

4. During the past five years has the name of the firm been changed or has any other business been purchased or any merger or consolidation taken place? Yes _____ No _X_ If yes, please give full details: _____

5. a. Is the firm engaged in, owned by, associated with or controlled by any other business; If yes, give details _No_

   b. Fees & Receipts/Construction Values _____

| Dates | Estimate for Coming Year<br>From _1/09_ To _12/09_ | Present 12 Months<br>From _1/08_ To _12/08_ | Previous 12 Months<br>From _1/07_ To _12/07_ |
|---|---|---|---|
| Domestic Operations<br>c. Construction Values | _6,000,000.00_ | _6,000,000.00_ | _9,000,000.00_ |
| d. Gross Billings/Fees<br>whether collected or<br>not (excluding fees<br>derived from Joint<br>Ventures) | _1,500,000.00_ | _1,500,000.00_ | _1,600,000.00_ |
| Foreign Operations<br>e. Construction Values | _0_ | _0_ | _0_ |
| f. Gross Billings/Fees<br>whether collected or<br>not (excluding fees<br>derived from Joint<br>Ventures) | _0_ | _0_ | _0_ |

6. PROFESSIONAL ACTIVITIES AND SPECIALTY (Attach narrative description if necessary)
   a. Describe in detail the professional activities for which coverage is desired and indicate percentage of gross receipts derived from each activity: _Architectural, Engineering + Land Planning Design_

   b. Please attach separately lists of:
      (i)   five largest projects and description of work performed for each;
      (ii)  names of partners, key employees, etc. and their professional qualifications including resumes.
   c. Please attach copies of:
      (i)   advertisements, brochures, descriptive literature;
      (ii)  sample contract between you and your clients outlining services to be rendered;
      (iii) latest financial data (Annual Report or Balance Sheet).

7. TOTAL PERSONNEL: (including those listed in 6.b. (ii) _34_

   a. Number of Engineers _4_
   b. Number of Surveyors _0_
   c. Number of Architects _1_
   d. Number of Inspectors _0_
   e. Number of Fieldmen _9_
      (rodmen, chairmen, etc.)
   f. Number of Draftsmen _6_
   g. Number of Technical Employees _40_
   h. Number of Clerical & Accounting employees _5_

8. States in which licensed? _SC_

AE 08/04                                                                                              Page 1 of 4

9. Please indicate the approximate percentages of the professions in which your firm is engaged:

| | | | |
|---|---|---|---|
| Architects | 30 % | Electrical Eng. | 8 % |
| Build. Designers | 10 % | HVAC Eng. | 8 % |
| Civil Eng. | 1.5 % | Land Surveyors | 8 % |
| Design/Const. | 10 % | Mechanical Eng. | 8 % |
| Environmental Eng. | 8 % | Interior Design | 8 % |
| | | | |
| Naval/Marine | 8 % | Const. Mgmt. | 8 % |
| Process Eng. | 8 % | Soil Eng. | 8 % |
| Struct. Eng. | 8 % | Others not shown | |
| Testing Lab | 8 % | please specify below: | |

10. Has the Applicant ever provided any service other than noted under Question 9? Yes _____ No ✓ If "Yes", please explain. _____

11. Does the Applicant's practice involve any subletting or subcontracting of work to others? Yes_____ No ✓ If "Yes", please specify what is sublet or subcontracted._____

12. Foreign Work? Yes _____ No ✓ If Yes, please give full details: _____

13. Have any of those listed in item 6.b. (ii) ever been the subject of disciplinary action by authorities as a result of their professional activities? Yes_____ No ✓ If yes, please give details: _____

14. What professional Association does the Applicant belong to? ASCE    IEEE .

15. Please indicate the type and approximate percentage of work under each heading:

**I.    Type of Services**

Work in connection with:

| | | | | |
|---|---|---|---|---|
| a. | Feasibility studies, reports, surveys where applicant is not involved in design | None ✓ | Yes _____ | _____% |
| b. | Design without supervisory services | None ✓ | Yes _____ | _____% |
| c. | Design and Observation | None _____ | Yes ✓ | 85 % |
| d. | Boundary Surveys | None ✓ | Yes _____ | _____% |
| e. | Soil Testing | None ✓ | Yes _____ | _____% |
| f. | Sewerage Systems | None ✓ | Yes _____ | _____% |
| g. | Water Systems | None ✓ | Yes _____ | _____% |
| h. | Foundations | None _____ | Yes ✓ | 5 % |
| i. | Interior Design | None ✓ | Yes _____ | _____% |
| j. | HVAC, plumbing & electricity | None ✓ | Yes _____ | _____% |
| k. | Naval/Marine | None ✓ | Yes _____ | _____% |
| l. | Work as construction managers | None ✓ | Yes _____ | _____% |
| m. | Testing Labs | None ✓ | Yes _____ | _____% |
| n. | Materials handling | None _____ | Yes ✓ | 10 % |
| o. | Disposal or handling of hazardous waste | None ✓ | Yes _____ | _____% |
| p. | Other _____ | None ✓ | Yes _____ | _____% |

Please specify the percentages relative to the Applicant's total work volume:

| | |
|---|---|
| Services not resulting in construction | 40 % |
| Design with no construction phase services | 5 % |
| Design with periodic inspection of construction to ensure Design compliance (per AIA/ACEC/NSPE contracts) | 40 % |
| Design with responsibility for directing the contractor | 5 % |
| Other _____ | 8 % |
| **TOTAL** | 100 % |

II.    TYPE OF PROJECTS

Work with connection with:

| | | |
|---|---|---|
| a. | Private Dwellings Single Family Homes | None ✓ Yes ____ ___% |
| b. | Private Dwellings Townhouses, Apartments | None ✓ Yes ____ ___% |
| c. | Private Dwellings Condominiums | None ✓ Yes ____ ___% |
| d. | Commercial Buildings | None ___ Yes ✓ 3 % |
| e. | Hospitals, Schools, Churches and Municipal Bldgs. | None ___ Yes ✓ 45 % |
| f. | Industrial buildings | None ___ Yes ✓ 3 % |
| g. | Petrochemical, refinery, fertilizer, ammonia, urea plants | None ✓ Yes ____ ___% |
| h. | Mines | None ✓ Yes ____ ___% |
| i. | Harbors & Jetties | None ✓ Yes ____ ___% |
| j. | Bridges & tunnels | None ✓ Yes ____ ___% |
| k. | Dams | None ✓ Yes ____ ___% |
| l. | Nuclear & atomic projects | None ✓ Yes ____ ___% |
| m. | Parking Structures | None ✓ Yes ____ ___% |
| n. | Highways/roads | None ✓ Yes ____ ___% |
| o. | Power Plants | None ✓ Yes ____ ___% |
| p. | Subdivisions | None ✓ Yes ____ ___% |
| q. | Industrial/process | None ___ Yes ✓ 1 % |
| r. | Environmental | None ✓ Yes ____ ___% |
| s. | Other _____ | None ✓ Yes ____ ___% |
| | | TOTAL ____ ____ 100% |

16. Does the Applicant foresee any substantial changes in item No. 6.a. during the next twelve months?
Yes ____ No ✓ If yes, please give details: _____

17. If the Applicant provides any of the following services, please indicate the percentage:
Product or Equipment Design Ø %    Material Testing Ø %    Soil Mechanics Ø %
Solar Heating Ø %    Valuations Ø %    Financial or Economic Studies Ø %

18. Does the Applicant, or any enterprise financially related to the Applicant or the Applicant's principals, partners, directors or officers engage in any of the following activities?

| | |
|---|---|
| Construction, erection, fabrication or installation | Yes ____ No ✓ |
| The letting of construction contracts | Yes ____ No ✓ |
| Construction or project management | Yes ____ No ✓ |
| Manufacture, sale or distribution of any product, good or process | Yes ____ No ✓ |
| Real Estate Development | Yes ____ No ✓ |

If any of the above are answered "Yes", please explain. _____

19. What percentage of the Applicant's practice involves any of the following:
a. Subletting of work to others Ø %    Type of work sublet Ø %
b. Is evidence of insurance from consultants required? Yes ✓ No ____

20. Equity Interest:
Does the applicant provide professional services on projects in which he retains ownership interest (BASIC POLICY EXCLUDE COVERAGE FOR THESE PROJECTS)? Yes ____ No ____    N/A
If coverage is desired provide complete details.

21. Does any one contract or client represent more than 50% of annual work? Yes ____ No ✓ If yes, please give details: _____

22. Does the Applicant or any subsidiary, parent or otherwise related entity engage in actual construction, manufacturing or fabrication? Yes ____ No ✓ If yes, give details: _____

23. Are any of the individuals named in item No. 6.b.(ii) owners, officers, or employees of firm engaged in actual construction, manufacturing or fabrication? Yes ____ No ____ If yes, give details: _____ N/A

24. Does the Applicant work with other firms in Joint Ventures? Yes ____ No ✓ (BASIC POLICY EXCLUDES COVERAGE FOR JOINT VENTURES). If coverage is desired provide complete details: _____

25. Give Professional Liability coverage for last five years for the firm:

| Carrier | Limit | Deductible | Premium | Expiration (Mo/Day/Yr) |
|---|---|---|---|---|
| Landmark American Insurance | $5,000 | $15,750.00 | 05/18/08 | |
| Landmark American Insurance | 5,000 | 17,116.00 | 05/18/07 | |
| Landmark American Insurance | 5,000 | 14,175.00 | 05/18/06 | |
| Landmark American Insurance | 5,000 | | 05/18/05  LHR 766 562 | |
| Palmer + Cay of Savannah | | | 05/18/04 | |

If expiring insurance is a claims made policy, what is the retroactive date? _____

26. Is the Applicant currently insured under a Commercial General Liability Policy? Yes _X_ No _____ If yes, please give details:

| Insurance Company | Type of Coverage | Limits BI | PD | Effective From | To |
|---|---|---|---|---|---|
| Hartford | Bus Liab | 1,000,000 | 2,000,000 | 01/15/07 | 01/15/08 |

27. Has any application for Architects & Engineers Professional Liability insurance made on behalf of the firm, any predecessors in business or present Partners ever been declined or has the insurance ever been canceled or renewal refused? Yes _____ No _x_ If yes, please give details: _____

28. Has any claim ever been made against the applicant or any persons named in question 1 or item 6.b.(ii)? Yes _____ No _✓_ If yes, how many? _____ Please attach currently valued company loss runs for the past 5 years and details stating: 1) date when claim was made; 2) date the act giving rise to the claim was committed; 3) name of the claimant; 4) nature of the claim; 5) amount involved including reserves; and 6) final disposition.

29. Is the Applicant aware of any circumstances which may result in any claim against the applicant or any persons named in question 1 or item 6.b.(ii)? Yes _____ No _✓_ If yes, how many? _____ Please attach currently valued company loss runs for the past 5 years and details stating: 1) date when claim was made; 2) date the act giving rise to the claim was committed; 3) name of the claimant; 4) nature of the claim; 5) amount involved including reserves; and 6) final disposition.

30. Has any insurer canceled or refused to renew any similar insurance during the past five years? __No__

31. Limits of Liability requested _1,000,000_  Deductible *15,000*

32. Desired term of policy: From _03/18/08_   To _03/18/09_

**Representations**

The Applicant declares that the above statement and representations are true and correct, and that no facts have been suppressed or misstated. All written statements and materials furnished to the Company, in conjunction with this application will be incorporated by reference into this application and made part hereof.

This application does not bind the Applicant to buy, or the Company to issue the insurance, but it is agreed that this form shall be the basis of the contract should a policy be issued, and it will be attached to and made part of the policy. The undersigned Applicant declares that if the information supplied on this application changes between the date of this application and the time when the policy is issued, the Applicant will immediately notify the company of such changes, and the Company may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance.

_04/01/2008_
Date

_(signature)_
Signature of Applicant

_President_
Title

Producer

AE 08/04

RSG 51029 0505



A member of Alleghany Insurance Holdings LLC