**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| BERENYI, INC.                   ) | |
|                            ) | |
|         Plaintiff,       ) | |
|                            ) | C.A. No.: 2:09-CV-01556-PMD |
|        v.                ) | |
|                            ) | |
| LANDMARK AMERICAN INSURANCE  ) | **ORDER** |
| COMPANY,                    ) | |
|                            ) | |
|         Defendant.     ) | |
| _____) | |

This matter is before the court upon cross-motions for summary judgment filed by Plaintiff Berenyi, Inc. ("Berenyi") and Defendant Landmark American Insurance Company ("Landmark"). These motions arise out of a declaratory judgment action commenced by Berenyi for the purpose of determining whether Landmark is obligated to defend and indemnify Berenyi in an underlying suit brought against Berenyi for professional negligence and breach of warranty. Berenyi has moved for partial summary judgment seeking a declaration that Landmark is obligated to defend Berenyi in the underlying suit. In its cross-motion for summary judgment, Landmark seeks a declaration that there is no duty to defend or indemnify. For the reasons set forth below, the court grants Plaintiff Berenyi's motion for partial summary judgment and denies Defendant Landmark's cross-motion for summary judgment.

## BACKGROUND

On September 5, 2008, a lawsuit was filed against Berenyi in the United States District Court for the District of South Carolina, *Kanma Partners et al. v Berenyi, Inc., et al,* C.A. No.: 2:08-3063-PMD ("the underlying action"). The underlying action asserts that Berenyi, a South Carolina professional corporation and licensed engineering firm provided land surveying, civil

engineering, irrigation/landscape planning, and permitting for the construction of the Value Place hotel in North Charleston, South Carolina. The underlying action asserts causes of actions in professional negligence and breach of implied warranty and seeks damages in the form of repair costs, loss of use, diminution in value, loss profits, loss of income, consequential damages, and punitive damages.

Landmark has insured Berenyi since May 18, 2005. At the time the underlying action was filed, Berenyi held a professional liability, claims-made policy issued by Landmark effective for claims first made and reported during the Policy Period of May 18, 2008 to May 18, 2009 ("the Policy"). According to the insuring agreement of the policy:

**A.      Covered Services**

The company will pay on behalf of the Insured as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as Damages and associated Claim Expenses, arising out of a negligent act, error or   omission, even if such a Claim is groundless, false or fraudulent, in the rendering or failure to render professional services as described in the Declarations, provided that the:

1.      Claim is first made against the Insured during the Policy Period, and reported to the company no later than thirty (30) days after the end of the Policy Period;

2.      Negligent act, error or omission took place in a covered territory;

3.      Negligent act, error or omission took place after the Retroactive Date as shown in the Declarations.

The Retroactive Date is defined as:

> The date stated in the Declarations on or after which any alleged or actual negligent act, error or omission must have first taken place in order to be considered for coverage, under this policy.

The Retroactive Date listed on the Declarations page is May 18, 2005. Thus, all parties agree that the alleged negligent act, error, or omission must have taken place after May 18, 2005, in order to trigger coverage.

On September 5, 2008, the underlying action was commenced against Berenyi. On October 15, 2008, Landmark received correspondence from Berenyi notifying Landmark of the underlying action. Landmark assumed the defense of Berenyi by appointing counsel shortly thereafter subject to a reservation of rights. On May 13, 2009, Landmark sent a letter to Berenyi stating that Landmark no longer had any defense or indemnity obligations based on the applicability of the Retroactive Date. According to Landmark, the alleged negligent act, error, or omission giving rise to the negligence claim occurred in April 2005, approximately one month prior to the Retroactive Date of May 18, 2005.

On June 12, 2009, Berenyi filed this action seeking a declaration that Landmark has a duty to defend and indemnify Berenyi in the underlying action. On July 10, 2009, Berenyi filed a motion for partial summary judgment on the issue of Landmark's duty to defend. On August 7, 2009, Landmark filed its memorandum in opposition to Berenyi's motion for partial summary judgment and filed a cross-motion for summary judgment on both the issue of its duty to defend and indemnify Berenyi in the underlying action.

# LEGAL STANDARD FOR SUMMARY JUDGMENT

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

# ANALYSIS

## I.     General Principles of South Carolina Insurance Law

Under South Carolina law, insurance policies are subject to the general rules of contract construction. *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 514 S.E.2d 327 (1999). The court must give policy language its plain, ordinary, and popular meaning. *Id.* When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have

used. *Id.; see also Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc.*, 356 S.C. 156, 162–63, 588 S.E.2d 112, 115 (2003). This court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. *Id.* An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. *S.C. Ins. Co. v. White*, 301 S.C. 133, 390 S.E.2d 471 (Ct. App. 1990).

It is true that a policy clause extending coverage has to be liberally construed in favor of coverage, *Torrington Co. v. Aetna Cas. and Sur. Co.*, 264 S.C. 636, 216 S.E.2d 547 (1975), while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. *Owners Ins. Co. v. Clayton*, 364 S.C. 555, 560, 614 S.E.2d 611, 614 (2005); *Boggs v. Aetna Cas. and Sur. Co.*, 272 S.C. 460, 252 S.E.2d 565 (1979). If the intention of the parties is clear, however, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties. *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 344 S.C. 525, 530, 544 S.E.2d 848, 850 (Ct. App. 2001) (citation omitted).

## II.  **Duty to Defend**

### A.  **Denial of Coverage Based on the Retroactive Date of the Policy**

Both parties seek a determination as to whether or not Landmark is under an obligation to defend Berenyi in the underlying action.  Landmark denies that it has a duty to defend Berenyi because Landmark argues that the negligent acts, errors or omissions alleged in the underlying action occurred prior to May 18, 2005—the Retroactive Date of the policy.

As stated above, Plaintiffs in the underlying action, the owners of the Value Place hotel in North Charleston ("underlying Plaintiffs"), brought a professional negligence and breach of implied warranty action against Berenyi arising out of Berenyi's surveying, engineering,

planning, and permitting of the Value Place hotel. According to the underlying Complaint, Berenyi was negligent, negligent per se, and grossly negligent in the following particulars:

    a.      in designing, drawing and submitting plans for use on the Project that erroneously designated the flood plain of the Project;

    b.      in designing, drawing and submitting defective drainage plans that were based on an incorrect base flood elevation;

    c.      in repeatedly failing to follow through with the appropriate government entities so that a water meter for the Project could be obtained; and,

    d.      in failing to properly perform their contract administration responsibilities.

Based on the allegations, as set forth in the underlying Complaint, Landmark originally believed that it had an obligation to defend Berenyi in the underlying action. However, after receiving an expert report prepared by James David Horne on behalf of Berenyi in the underlying action ("the Horne Report"), Landmark denied coverage to Berenyi. One of the negligent acts alleged in the underlying action is that Berenyi prepared engineering and land surveying documents that erroneously showed the Value Place hotel as being located in a 500 year flood zone, when in fact the hotel was located in a 100 year flood zone. According to the Horne Report, Berenyi prepared the original survey indicating the improper flood zone on April 8, 2005. According to Landmark, because the Policy provides coverage only for a negligent act, error or omission that occurs after May 18, 2005 and because Berenyi allegedly prepared a survey indicating an improper flood zone on April 8, 2005, the Policy does not provide coverage and Landmark is under no obligation to defend or indemnify Berenyi in the underlying action.

Berenyi argues that even if *a* negligent act occurred prior to the Retroactive Date of the policy, the underlying Complaint alleges other negligent acts, errors or omission that occurred

after the Retroactive Date of the Policy. Berenyi points out that besides the improper flood plain designation, the underlying action also asserts that Berenyi was negligent in designing, drawing and submitting defective drainage plans; in repeatedly failing to follow through with the appropriate government entities so that a water meter for the Project could be obtained; and, in failing to properly perform their contract administration responsibilities. Berenyi acknowledges that the Horne report claims that the defective drainage plans were a result of the improper flood designation; however, Berenyi notes that the Horne report does not claim that the failure to follow through with the appropriate government entities to obtain a water meter for the project or Berenyi's alleged failure to properly perform their contract administration responsibilities were connected in any way to the improper flood designation or occurred prior to the Retroactive Date of the policy. Additionally, Berenyi notes that the expert report of C. William Brewer ("the Brewer Report") specifically states that defective drainage plans were unrelated to the defective flood plain designation. Therefore, Berenyi claims that because some of the negligent acts alleged in the underlying Complaint took place after the Retroactive Date of the policy, there is at least a possibility of coverage that obligates Landmark to defend Berenyi in the underlying action.

Pursuant to South Carolina law, an insurer's duty to defend is determined by the allegations of the underlying complaint. *Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 387-88 (4th Cir. 2001) (citing *R.A. Earnhardt Textile Mach. Div., Inc. v. S.C. Ins. Co.*, 282 S.E.2d 856, 857 ( S.C. 1981)). If the facts alleged in the underlying complaint "fail to bring the case within the policy coverage, the insurer is free of the obligation to defend." *R.A. Earnhardt*, 282 S.E.2d at 857. However, the complaint is construed liberally, with all doubts resolved in favor of the insured. "If the underlying complaint creates a possibility of coverage under an

insurance policy, the insurer is obligated to defend." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 459 S.E.2d 318, 319 (S.C. Ct. App. 1994) (citing *Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co.*, 265 S.E.2d 38, 40 (S.C. 1980)). The inclusion of claims which would not be covered by the policy does not abrogate an insurer's duty to defend when the complaint raises at least one claim covered by the policy. *Isle of Palms Pest Control,* 459 S.E.2d at 319. In short, if there is even one aspect of the claim which must be defended, the insurer must defend the entire suit. *Id.*

The court finds that because some of the alleged negligent acts, errors, or omissions may have occurred after the Retroactive Date, there is a possibility of coverage under the Policy and Landmark is obligated to defend Berenyi in the underlying action. The underlying Complaint alleges four distinct negligent acts committed by Berenyi. While some of the alleged negligent acts may have occurred prior to the Retroactive Date of the policy, such as the improper flood designation that was indicated in an April 2005 survey, the underlying Complaint alleges three other negligent acts that may have occurred after the Retroactive Date of the policy. As stated above, the underlying Complaint alleges that Berenyi negligently designed, drew, and submitted defective drainage plans for the project specifically by calling for a dry retention pond when in fact a wet retention pond was eventually necessary for the project. As to this allegation, while Landmark is correct that the Horne Report indicates that that the "retention pond modifications would not have been necessary if the correct flood zone had been designated prior to the building's original design," the Brewer Report states that the drainage system problems are "unrelated to the specified flood elevation." Additionally, there is no reference to when the negligent acts took place in the underlying Complaint. Therefore, as to the allegation of defective drainage plans, there is at least a possibility that this alleged negligent act occurred

after the Retroactive Date of the policy. However, the underlying Complaint also alleges that Berenyi "*throughout* construction of project, failed to follow through with the appropriate government entities as required in order to obtain the water meter for the project" and that Berenyi improperly fulfilled its contract administration obligations "*during construction*." Construction of the project began in May 2006 and the underlying Complaint alleges that Berenyi committed negligent acts *during* construction, therefore, there is a possibility, if not a certainty, that at least some of the alleged negligent acts took place after the Retroactive Date of May 18, 2005. Thus, Landmark improperly withdrew defense coverage based on its claim that Berenyi's negligent acts, errors, or omissions took place prior to the Retroactive Date of the Policy.

**B.     Denial of Coverage Based on a Claim before Inception of the Policy**

Landmark also argues that in addition to the denial of coverage under the Retroactive Date, denial of coverage is proper because the underlying action involves a Claim made before the inception of the Policy. As stated above, the Policy provides coverage only if the Claim is first made during the Policy period and reported to Landmark no longer than thirty days after the end of the Policy period. The Policy period is from May 18, 2008 to May 18, 2009. The underlying action was filed September 5, 2008, and Berenyi notified Landmark of the underlying action on October 15, 2008. Landmark argues that even though the underlying action was not filed until September 5, 2008, the "Claim" as defined by the policy was actually first made against Berenyi in September of 2006, which is outside of the policy period. The Policy defines "Claim" in pertinent part under Part III.C. as "a written or verbal demand received by the Insured for money or services." During September of 2006, Berenyi was advised that a North Charleston Flood Plains Investigator notified the construction company working on the project that the

building was at least two feet below the specified and necessary elevation.  A letter addressed to other parties and forwarded to Berenyi dated September 21, 2006 and provided to Berenyi on September 25, 2006, discussed a meeting held on September 19, 2006 where Berenyi's representatives and others in attendance were advised that the elevation of the building was not correct because of an incorrect flood zone designation.  After being advised of the error, Berenyi "agreed to redesign a workable solution."  The September 21, 2006 letter also warns about several known delays caused as a result of the error as well as additional schedule impacts that may arise.  Landmark argues that "[b]ased upon the discussions of the September 19, 2006 meeting and/or the contents of the September 21, 2006 letter, a Claim(s) was/were made against Plaintiff" because the meeting and/or letter constitute(s) "a written or verbal demand received by the Insured for money or services."

Berenyi argues that although Berenyi was informed of an incorrect flood elevation in September 2006, neither a written nor verbal demand for money or services was made at the meeting.  Berenyi argues that it volunteered its services and agreed to provide a redesign while in attendance at the meeting.  Berenyi also argues that Landmark has provided no testimony, evidence, or affidavits to show that a demand for money or services was made upon Berenyi at the meeting.  Berenyi argues that "Landmark further ignores the possibility that a meeting between business partners who have experienced a problem might not necessarily require litigation or a 'demand' at all."  In addition, Berenyi argues that the letter, which was not even addressed to Berenyi but was later forwarded to Berenyi, does not in any way indicate that a Claim has been made or will be forthcoming against Berenyi, but states that "Berenyi has agreed to redesign a workable solution."

The court agrees that Landmark has not provided evidence that a demand was made upon Berenyi for money or services at the September 19, 2006 meeting. Additionally, the court finds that the September 21, 2006 letter is not a "Claim" under the policy as the letter is not even addressed to Berenyi and in no way indicates that a demand for services or money has been made upon Berenyi. Lastly, the court finds that Landmark has provided no other evidence that a demand for services or money was made upon Berenyi anytime prior to the filing of the September 2008 complaint, which was filed against Berenyi and reported to Landmark within the Policy period. Therefore, Landmark improperly denied Berenyi coverage for its defense in the underlying action based upon a Claim being first made prior to the effective date of the Policy.

### C. Denial of Coverage for Failure to Notify

Landmark argues that it has no duty to defend or indemnity Berenyi in the underlying action because Berenyi failed to comply with Part IV.A. of the Policy which states: "The Insured must notify the Company as soon as practicable of an incident, occurrence or offense that may reasonable be expected to result in a Claim. The Insured must immediately send copies to the Company of any demands, notices, summonses or legal papers received in connection with any Claim. . . ." Landmark argues that Berenyi should have notified Landmark of the flood designation error within a reasonable time after Berenyi became aware of the error in September 2006. Berenyi did notify Landmark of the underlying action in October of 2008, approximately one month after the suit was commenced; however, Landmark argues that Berenyi did not comply with the Policy's notification requirement.

Berenyi argues that that there was no incident, occurrence, or offense that it reasonably expected to result in a Claim until the underlying action was commenced in September 2008.

Berenyi argues that although it learned of the incorrect flood plain designation in September 2006, there was never any indication that this error would result in a Claim. Instead, Berenyi argues that it volunteered to redesign another set of plans to fix the flood plain error. Berenyi also argues that Landmark has failed to demonstrate how any alleged failure to notify Landmark within a reasonable time has substantially prejudiced Landmark's rights, a showing required under South Carolina law in order for an insurer to avoid its contractual right to defend and/or indemnify the insured. *Vermont Mut. Ins. Co. v. Singleton*, 446 S.E.2d 417, 421 (S.C. 1994). Berenyi argues that Landmark has been provided sufficient time to investigate the facts and to prepare a defense; that no default judgment has been entered; and that until Landmark denied a defense to Berenyi, it had defended the action, controlled the litigation, and hired experts.

The purpose of a notification requirement is to allow for investigation of the facts and to assist the insurer in preparing a defense. *Washington v. National Service Fire Ins. Co.,* 168 S.E.2d 90 (S.C. 1969). Where the rights of innocent parties are jeopardized by a failure of the insured to comply with the notice requirements of an insurance policy, the insurer must show substantial prejudice to the insurer's rights. *Factory Mut. Ins. Co. v. Kennedy,* 182 S.E.2d 727 (S.C. 1971) (wherein the prejudice requirement was announced in a third party automobile insurance case). South Carolina extended the substantial prejudice requirement beyond mandatory automobile insurance to voluntary insurance in *Whittington v. Ranger Ins. Co.,* 201 S.E.2d 620 (S.C. 1973) (insurance for aviation operations).

The court finds that Landmark has failed to meet its burden of proving that Berenyi failed to comply with the notification requirement or that any such failure substantially prejudiced Landmark. As stated above, Berenyi claims that in September 2006, when it was notified of the flood designation error, there was no indication that this error could reasonably be expected to

result in a Claim, and the court finds that Landmark has provided no evidence to dispute Berenyi's claim. The court also finds that Landmark has failed to meet its burden of showing that it has been substantially prejudiced by any delay in Berenyi's notification of the Claim. As stated by Berenyi, Landmark has been provided sufficient time to investigate the facts and to prepare a defense; that no default judgment has been entered; and that until Landmark denied a defense to Berenyi, it had defended the action, controlled the litigation, and hired experts. Lastly, while Landmark claims that Berenyi should have reasonably expected a Claim based on the September 2006 notification of the flood plain error; Landmark has not alleged that Berenyi had knowledge of any of the other negligent acts alleged in the underlying Complaint prior to the filing of the underlying action in September 2008. Thus, the court finds that there is a possibility of coverage and that, therefore, Landmark has an obligation to provide Berenyi with a defense in the underlying action.

### D. Denial of Coverage Based on Exclusions from Coverage

Landmark also argues that in addition to the denial of coverage based on the Retroactive Date of the policy and the Claim being made outside the Policy period, that Berenyi also has no coverage under the Policy because of a number of exclusions.

### 1. Exclusion for Claims Arising Out Of Failure to Provide Designs, Drawings, Estimates, Plans, Specifications, Studies, or Surveys in a Timely Manner or Within a Prescribed Period of Time.

Landmark argues that there is no coverage for the underlying allegation that Berenyi negligently and improperly failed to follow through with government entities "in order to obtain the water meter for the project in a timely fashion." Landmark claims that Exclusion V of the policy precludes coverage for this allegation. Exclusion V excludes from coverage any "Claim or Claims Expense based upon or arising out of: (V) An actual or alleged failure to prepare or

provide designs, drawings, estimates, plans, specifications, studies, or surveys in a timely manner or within a prescribed period of time."  The court finds that the underlying Complaint alleges only that Berenyi failed to follow through with government entities in order to obtain a water meter for the project and does not allege that Berenyi failed to prepare or provide "designs, drawings, estimates, plans, specifications, studies, or surveys in a timely manner. . . ." Additionally, this exclusion, if applicable, would only preclude coverage for part of the underlying claim and, as stated above, the inclusion of claims which would not be covered by the policy does not abrogate an insurer's duty to defend when the complaint raises at least one claim covered by the policy.  *Isle of Palms Pest Control,* 459 S.E.2d at 319.  Therefore, this exclusion, which would only affect coverage as to part of the underlying claim, does not affect whether or not there is a duty to defend—the only determination the court is making in this Order.

### 2. Exclusion for Claims Arising Out Of Any Obligation or Liability Assumed by the Insured Under Any Contract or Any Oral or Written Agreement.

Landmark also claims that any allegation in the underlying Complaint that Berenyi failed to perform "contract administration obligations" is excluded from coverage based upon the language of Exclusion (I).  Exclusion I excludes from coverage any Claim or Claim Expense arising out of "any obligation or liability assumed by the Insured under any contract or any oral or written agreement, unless liability would have attached in the absence of such a contract of agreement."  However, as discussed above, this exclusion, if applicable, would only preclude coverage for one allegation of the underlying Complaint and, as stated above, the inclusion of claims which would not be covered by the policy does not abrogate an insurer's duty to defend when the complaint raises at least one claim covered by the policy.  *Isle of Palms Pest Control,* 459 S.E.2d at 319.  Therefore, this exclusion, which would only affect coverage as to part of the

underlying claim, does not affect whether or not there is a duty to defend—the only determination the court is making in this Order.

> ### 3. Exclusion for Claims Arising Out Of Any Alleged Act, Error, Omission, or Circumstance Likely to Give Rise to a Claim that an Insured Had Knowledge of Prior to the Effective Date of This Policy.

Landmark claims that it has no duty to defend or indemnify Berenyi in the underlying action because Berenyi was reasonably notified of circumstances likely to give rise to a Claim. Pursuant to Exclusion Q, the Policy excludes from coverage any "Claim or Claims Expenses based upon or arising out of: (Q) Any alleged act, error, omission, or circumstance likely to give rise to a Claim that an Insured had knowledge of prior to the effective date of this Policy. This exclusion includes, but is not limited to, any prior Claim or possible Claim referenced in the Insured's application." Landmark argues that, as discussed above, a "Claim" was made against Berenyi as early as September 19, 2006 when representatives of Berenyi attended a meeting and were informed of the flood plain designation error. Landmark argues that based on the September 19, 2006 meeting and the September 21, 2006 letter, Berenyi was reasonably notified of circumstances likely to give rise to a Claim. Landmark alleges that "[s]ince Plaintiff was aware of its alleged negligence and the potential severity of the damages associated with the negligence as early as September 2006 and failed to report notice of circumstances likely to give rise to a Claim(s) or possible Claim(s) prior to the inception of the Policy, Defendant has no coverage or indemnity obligations to Plaintiff in the Underlying Action based upon Exclusion Q."

Berenyi argues that it had no knowledge of any alleged act, error, omission, or circumstance likely to give rise to a Claim prior to the inception of the Policy. As discussed above in the court's analysis of the notification requirement, Berenyi argues that neither the

September 19, 2006 meeting nor the September 21, 2006 letter gave Berenyi knowledge that a Claim was likely to arise out of the flood plain designation error. According to Berenyi, once notified of the flood plain error, Berenyi agreed to provide a redesign of the project and find an agreeable solution to the problem. Berenyi claims that "it was not threatened with a lawsuit or arbitration, that it received no demand for money or services, and, in fact, was unaware of any such demand until served with the underlying lawsuit." Berenyi also argues that Landmark has failed to provide any other evidence that Berenyi had knowledge that a Claim was likely to arise.

The court finds that Exclusion Q does not remove the possibility of coverage in the underlying action, and that, therefore, Landmark is obligated to defend Berenyi in the underlying action. As discussed above, Landmark has not provided any evidence of what was said at the September 19, 2006 meeting other than that Berenyi was notified that there was a flood plain error. In addition, the September 21, 2006 letter only states that there is an error with the project and that Berenyi has agreed to provide a workable solution. The letter is not addressed to Berenyi and in no way indicates that litigation is forthcoming. However, decisive as to the duty of defense, while Landmark claims that Berenyi should have reasonably expected a Claim based on the September 2006 notification of the flood plain error; Landmark has not alleged that Berenyi had knowledge of any of the other negligent acts alleged in the underlying Complaint prior to the filing of the underlying action in September 2008. Thus, the court finds that there is a possibility of coverage and that, therefore, Landmark has an obligation to provide Berenyi with a defense in the underlying action.

### 4. Exclusion for Claims Arising Out Of Cost Overruns or Cost Estimates Being Exceeded.

Lastly, Landmark claims that the Policy does not provide coverage for Berenyi in the underlying action because "the Underlying Action is riddled with allegations that Plaintiff's

alleged negligence caused significant delays and additional and unexpected costs to be incurred."

Exclusion R excludes from coverage any "Claim or Claims Expenses based upon or arising out of: (R) Cost overruns or cost estimated being exceeded." Landmark argues that the Underlying Complaint seeks damages excluded by Exclusion R. Therefore, Landmark argues that "[a]s such, the Court should enforce Exclusion R to exclude any part of the Underlying Action that relates to cost overruns or cost estimates being exceeded, specifically damages involving additional and unexpected costs that were incurred."

As with all of the exclusions discussed above, this exclusion, if applicable, only would affect coverage for part of the damages claimed in the underlying action. The underlying Complaint seeks damages for repair costs, internal overhead costs from the involvement of internal personnel involved with the correction of the deficiencies, interest on monies expended related to the repairs, interest on the extended financing resulting from the cost of the repairs and delays, loss of income and profits resulting from the delays in completion of the project, diminution in value of the hotel, and all other consequential and direct damages. At this time, the court is only addressing the duty to defend, and because with or without this exclusion there is still a possibility of coverage for all or part of the claim, Landmark has a duty to defend the entire claim. As stated above, if there is even one aspect of the claim which must be defended, the insurer must defend the entire suit. *Isle of Palms Pest Control,* 459 S.E.2d at 319.

## III.    Duty to Indemnify

In its cross motion for summary judgment, Landmark asks the court to declare that it has no duty to indemnify Berenyi for damages resulting from the underlying action. Landmark also asks that if the court determines that there is the potential for coverage under the Policy, that the court apply allocation between covered and uncovered amounts. Berenyi claims that a

determination of Landmark's duty to indemnify and an allocation of damages are premature considering that there are no findings of fact or award of damages in the underlying action.

The court agrees with Berenyi and finds that because there have been no findings of fact or award of damages in the underlying action, it would be inappropriate for the court to determine the issues of indemnity and allocation at this time. While the duty to defend is based on the allegations in the underlying complaint, the "duty to indemnify is based on evidence found by the factfinder." *Union Ins. Co. v. Soleil Group, Inc.,* 465 F. Supp. 2d 567 (citing *Ellett Bros. Inc. v. U.S. Fid & Fuar. Co.,* 275 F.3d 384, 388 (4th Cir. 2001) (applying South Carolina law)). When findings of fact have not been made in the underlying lawsuit, the indemnity claim is not ripe. *Id.* For example, at this point in the underlying action, there is still a question of fact as to what negligent acts, errors, or omissions alleged in the underlying Complaint occurred before and after the Retroactive Date. At this time, the underlying action is still pending, findings of fact have not been made, and Berenyi has not been held liable to pay damages in the underlying action. Therefore, the court denies Landmark's motion for summary judgment on the issue of its duty to indemnify Berenyi in the underlying action.

## IV.     <u>Attorney Fees</u>

Berenyi argues that it is entitled to recover attorney fees pursuant to *Hegler v. Gulf Insurance Co.,* 243 S.E.2d 443 (S.C. 1978). Landmark argues that because it does not have a duty to defend in light of the applicability of the "Retroactive Date," Berenyi is not entitled to recover fees and costs in prosecuting this matter.

The court finds that Berenyi is entitled to recover attorney fees incurred in bringing this action to establish Landmark's duty to defend. Berenyi asserts that it is entitled to an award of attorney's fees pursuant to *Hegler*. In that case, Gulf Insurance Company issued a general

automobile liability insurance policy to Hegler; the policy obligated Gulf Insurance to defend

Hegler "against any suit seeking damages on account of bodily injury or property damage." *Id.* at

443. While this policy was in force, Hegler's vehicle was involved in an accident resulting in

injury to a passenger, and the passenger brought suit against Hegler. *Id.* Although Gulf Insurance

undertook to defend Hegler in the action, it notified Hegler "that it would bring a declaratory

judgment action to determine liability under the policy of insurance and advised him to obtain

his own attorney to represent him in the forthcoming action." *Id.* Hegler retained independent

counsel, and the declaratory judgment action "was ultimately decided in [Hegler's] favor, upon a

finding that coverage existed under the policy." *Id.*

Hegler then brought an action against Gulf Insurance to recover for attorney's fees he

incurred in successfully defending the declaratory judgment action. The Supreme Court of South

Carolina noted that because Hegler did not assert the right to recover attorney's fees pursuant to a

statute, he would recover them, if at all, under a contractual right. *Id.* at 444. The policy

provisions required Gulf Insurance

> (1) to pay on behalf of [Hegler] all sums which [Hegler] shall become legally
> obligated to pay as damages because of bodily injury or property damage, and (2)
> to defend any suit against the insured ( [Hegler] ) seeking damages on account of
> such bodily injury or property damage, even if the allegations of the suit are
> groundless, false or fraudulent.

*Id.* (internal quotation marks omitted). The court found Hegler was entitled to an award of

attorney's fees:

> The declaratory judgment action established [Gulf Insurance's] obligation under
> the policy to defend the action for damages. If [Gulf Insurance] had refused
> initially to defend, it would undoubtedly have been liable for the payment of
> counsel fees incurred by [Hegler] in the defense of the damage action. Instead
> however of refusing initially, [Gulf Insurance] began the defense and then sought,
> through the declaratory judgment action, to avoid any obligation to continue to
> defend. In order to obtain [Gulf Insurance's] continued defense of the action for
> damages, it was necessary for [Hegler] to employ counsel to resist the contention

> by [Gulf Insurance] of lack of coverage. There is no material difference in the legal effect between an outright refusal to defend and in undertaking the defense under a reservation of rights until a declaratory judgment is prosecuted to resolve the question of coverage. In either event, an insured must employ counsel to defend in the first instance in the damage action and in the second in the declaratory judgment action to force the insurer to provide the defense. In both, the counsel fees are incurred because of the insurer's disclaimer of any obligation to defend.

*Id.* Applying the law to Hegler's case, the Supreme Court of South Carolina found Hegler's legal fees "in successfully asserting his rights against [Gulf Insurance's] attempt in the declaratory judgment action to avoid its obligation to defend, were damages arising directly as a result of the breach of the contract." *Id.* at 444.

In *Security Insurance Co. of Hartford v. Campbell Schneider & Associates,* 481 F. Supp. 2d 496 (D.S.C. 2007), this court found the *Hegler* rule that attorney fees were available to an insured who prevailed in a dispute with an insurer concerning the insurer's duty to defend, was applicable in a federal diversity action seeking a declaration as to the duty to defend, regardless of the fact that the insurer's action was brought under the Declaratory Judgment Act. *Id.* (citing *World Ins. Co. v. Hartford Mut. Ins. Co.,* 602 F. Supp. 36, 37 (D. Md. 1985), *aff'd in part, rev'd in part* 784 F.2d 558 (4th Cir. 1986) (awarding attorney's fees to a plaintiff and noting, "In a declaratory judgment action brought pursuant to 28 U.S.C. §§ 2201, 2202, the reasonable sum of attorneys' fees and costs incurred in the filing and prosecution of the declaratory judgment action may be recovered, in the discretion of the court, if such recovery would be available under state law.... In Maryland, attorneys' fees and costs incurred in prosecuting a declaratory judgment action may be recovered by an insured from an insurer who unjustifiably has refused to defend." (citations omitted)). This court found that even though the action was brought pursuant to the federal Declaratory Judgment Act, the law of South Carolina applies and "because *Hegler* is the Supreme Court of South Carolina's interpretation of South Carolina law, this court is therefore

bound to apply its holding." *Security Insurance Co. of Hartford,* 481 F. Supp. 2d at 501.  Lastly, this court found that under South Carolina law, an attorney fee award to a prevailing insured did not depend on a finding of the insurer's bad faith.  *Id.* at 502.

Therefore, based on South Carolina's law as described above, Berenyi is entitled to attorney's fees for defense in the underlying action and for attorneys fees incurred in prosecuting this declaratory judgment action.

<u>**CONCLUSION**</u>

Based on the foregoing, it is **ORDERED** that Plaintiff Berenyi, Inc.'s Motion for Partial Summary Judgment is **GRANTED** and Defendant Landmark American Insurance Company's Cross Motion for Summary Judgment is **DENIED.**  The court finds that Landmark is obligated to defend Berenyi in the underlying action and that Berenyi is entitled to attorneys fees incurred in the underlying action and in this declaratory judgment action.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**January 14, 2010**
**Charleston, SC**